UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 11-5236

_____

SWANSON GROUP MFG. LLC, ROUGH & READY LUMBER LLC,
WASHINGTON CONTRACT LOGGERS ASSOCIATION,
AMERICAN FOREST RESOURCE COUNCIL, and DOUGLAS
TIMBER OPERATORS, INC.,

Plaintiff-Appellees,

v.

KEN SALAZAR, SECRETARY OF INTERIOR, and TOM VILSACK,
SECRETARY OF AGRICULTURE,

Defendant-Appellees,

and

KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD,
and CASCADIA WILDLANDS,

Movant-Appellants,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA, Case No. 1:10-cv-01843-RJL

_____

MOVANT-APPELLANTS' OPENING BRIEF – ORAL ARGUMENT WAIVED
_____

KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax

SUSAN JANE M. BROWN
Western Environmental Law Center
4107 N.E. Couch Street
Portland, OR 97232
(503) 914-1323 | Phone
(541) 485-2457 | Fax

*Attorneys for Movant-Appellants*

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES

I.     PARTIES AND *AMICI*

Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands sought party status as defendant-intervenors; their motion was denied; and they are movant-appellants here.  Plaintiff-appellees are Swanson Group Manufacturing LLC, Rough & Ready Lumber LLC, Washington Contract Loggers Association, American Forest Resource Council, and Douglas Timber Operators.  Defendant-appellees are Kenneth L. Salazar, in his official capacity as Secretary of the Interior, and Thomas J. Vilsack, in his official capacity as Secretary of Agriculture.  There are no *amici.*

II.    RULINGS UNDER REVIEW

This appeal is from a July 19, 2011 minute order issued by the district court (the Honorable Richard J. Leon) denying movant-appellants' unopposed motion to intervene as defendants.  App. 19.

III.   RELATED CASES

This case has not previously been before this Court.  There are no related cases currently pending in this Court; the underlying case continues on the merits before the district court.  *Swanson Group Mfg. LLC v. Salazar,* No. 10-1843-RJL (D.D.C.).

Respectfully submitted this 28th day of October, 2011.


s/  Kristen L. Boyles
KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
kboyles@earthjustice.org

SUSAN JANE M. BROWN
Western Environmental Law Center
4107 N.E. Couch Street
Portland, OR  97232
(503) 914-1323 | Phone
(541) 485-2457 | Fax
brown@westernlaw.org

*Attorneys for Movant-Appellants Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands*

## CORPORATE DISCLOSURE STATEMENT

Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands are nonprofit conservation organizations.  None of the appellant organizations has a parent corporation, and no publicly held corporation owns a 10-percent or greater ownership interest in any of the appellant organizations.

Respectfully submitted this 28th day of October, 2011.


s/  Kristen L. Boyles
KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
kboyles@earthjustice.org

SUSAN JANE M. BROWN
Western Environmental Law Center
4107 N.E. Couch Street
Portland, OR  97232
(503) 914-1323 | Phone
(541) 485-2457 | Fax
brown@westernlaw.org

*Attorneys for Movant-Appellants Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands*

# TABLE OF CONTENTS

GLOSSARY...................................................................................................ix

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUE....................................................................2

STATEMENT OF THE CASE......................................................................2

STATEMENT OF FACTS ............................................................................3

SUMMARY OF ARGUMENT .....................................................................6

ARGUMENT .................................................................................................7

I.     STANDARD OF REVIEW ................................................................7

II.    KS WILD MEETS THE STANDARD FOR INTERVENTION AS
       OF RIGHT. ..........................................................................................8

       A.     KS Wild's Motion to Intervene Was Timely. .......................9

       B.     KS Wild Has an Interest in the Subject Matter of This
              Litigation. ...............................................................................10

       C.     KS Wild's Interests May Be Impaired as a Result of This
              Litigation. ...............................................................................15

       D.     Neither of the Existing Parties Adequately Represent KS
              Wild's Interests........................................................................19

       E.     KS Wild Has Article III Standing. ........................................21

III.   IN THE ALTERNATIVE, KS WILD IS ENTITLED TO
       PERMISSIVE INTERVENTION. ...................................................22

CONCLUSION ...........................................................................................23

TABLE OF AUTHORITIES*

**Page(s)**

CASES

*AFRC v. Clarke*,
   No. 94-1031-TPJ (D.D.C. 2003) ......................................................................20

*Akiachak Native Cmty. v. U.S. Dept. of Interior*,
   584 F. Supp. 2d 1 (D.D.C. 2008)......................................................................10

*Am. Forest Res. Council v. Hall*,
   2007 WL 1576328 (D.D.C. 2007) ....................................................................10

*American Horse Protection Ass'n, Inc. v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001) ............................................................9, 16, 21

*Amoco Prod. Co. v. Village of Gambell*,
   480 U.S. 531 (1987)...........................................................................................17

*Bond v. United States*,
   131 S. Ct. 2355 (2011).........................................................................................9

*Douglas Timber Operators v. Salazar*,
   No. 09-1704-JR (D.D.C. 2009) .........................................................................18

*Environmental Defense Fund v. Costle*,
   79 F.R.D. 235 (D.D.C. 1978), *aff'd* .................................................................15

* *Equal Opportunity Comm'n v. National Children's Ctr.*,
   146 F.3d 1042 (D.C. Cir. 1998)........................................................................22

* *Foster v. Gueory*,
   655 F.2d 1319 (D.C. Cir. 1981)............................................................9, 16, 17

*Friends of Animals v. Kempthorne*,
   452 F. Supp. 2d 64 (D.D.C. 2006)..........................................................11, 15, 19

*Authorities upon which which we chiefly rely are marked with astericks.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*,
   528 U.S. 167 (2000).........................................................................21

\* *Fund for Animals v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003)..................................................8, 9, 10, 19

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ...........................................................18

*Jones v. Prince George's County, Maryland*,
   348 F.3d 1014 (D.C. Cir. 2003).......................................................9, 11

\* *Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008) ...........................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................21

\* *Morton v. Bricklayers, Masons and Plasterers Int'l Union of America*,
   543 F.2d 224 (D.C. Cir. 1976)..............................................................1

*National Wildlife Fed. v. Burford*,
   878 F.2d 422 (D.C. Cir. 1989), *rev'd on other grounds sub nom Lujan v.
   National Wildlife Federation*, 497 U.S. 871 (1990) ..........................................10

*Natural Res. Defense Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977).........................................................19

*Natural Res. Defense Council v. EPA*,
   99 F.R.D. 607 (D.D.C. 1983) ...........................................................16

\* *Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967)...........................................10, 15, 17

*People for the Ethical Treatment of Animals v. Babbitt*,
   151 F.R.D. 6 (D.D.C. 1993) .............................................................20

*Portland Audubon Soc'y v. Lujan*,
   795 F. Supp. 1489 (D. Or. 1992), *aff'd sub nom. Portland Audubon Soc'y
   v. Babbitt,* 998 F.2d 705 (9th Cir. 1993).......................................4, 20

\* *Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003) ............................................................9

\* *Sagebrush Rebellion v. Watt,*
   713 F.2d 525 (9th Cir. 1983) ............................................................18

*Seattle Audubon Soc'y v. Evans,*
   771 F. Supp. 1081 (W.D. Wash.), *aff'd,* 952 F.2d 297 (9th Cir. 1991) ..............3

*Seattle Audubon Soc'y v. Lyons,*
   871 F. Supp. 1291 (W.D. Wash. 1994) ..........................................4, 5

*Seminole Nation of Oklahoma v. Norton*,
   206 F.R.D. 1 (D.D.C. 2001) ............................................................10

*Sierra Club v. U.S. Envtl. Prot. Agency,*
   995 F.2d 1478 (9th Cir. 1993) ..........................................................15

\* *Smoke v. Norton,*
   252 F.3d 468 (D.C. Cir. 2001) ..........................................................8

*Smuck v. Hobson,*
   408 F.2d 175 (D.C. Cir. 1989) ..........................................................19

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) ........................................................................1

\* *Trbovich v. United Mine Workers of America*,
   404 U.S. 528 (1972) ......................................................................19

*United States v. British Am. Tobacco Australia Services, Ltd.*,
   437 F.3d 1235 (D.C. Cir. 2006) ........................................................9

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989) ..........................................................22

STATUTES

5 U.S.C. § 704 ..................................................................................1

28 U.S.C. § 1291 ..............................................................................1

vii

28 U.S.C. § 1331 ....................................................................................1

43 U.S.C. § 1181a ..................................................................................3

Oregon and California Lands Act of 1937 ..........................................3, 4

**OTHER AUTHORITIES**

7C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*,
   § 1916 & n.13 (2d ed. 1986) .............................................................10

Fed. R. App. P. 4(a)(1)(B) .....................................................................1

Fed. R. Civ. P. 24(a) ..................................... 1, 2, 7, 8, 15, 16, 18, 22, 23

Fed. R. Civ. P. 24(b) ...........................................................1, 2, 7, 22, 23

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| App. | Appendix |
| BLM | U.S. Bureau of Land Management |
| Decl. | Declaration |
| Dkt. | Docket |
| Fed. R. App. P. | Federal Rules of Appellate Procedure |
| Fed. R. Civ. P. | Federal Rules of Civil Procedure |
| KS Wild | Movant-appellants Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands |
| O&C Act | The Oregon and California Lands Act of 1937 |

## JURISDICTIONAL STATEMENT

(A)     Plaintiffs Swanson Group *et al.* allege that the district court has jurisdiction over the underlying case pursuant to 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory relief), and 2202 (injunctive relief).  Plaintiffs allege they have challenged final agency action as defined by the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

(B)     This Court has jurisdiction over this appeal from the district court's July 19, 2011 minute order pursuant to 28 U.S.C. § 1291.

(C)     Movant-appellants Klamath-Siskiyou Wildlands Center *et al.* filed their notice of appeal on September 9, 2011, App. 20[1], within the time allowed by Fed. R. App. P. 4(a)(1)(B).

(D)     This appeal is from the district court's July 19, 2011 order denying movant-appellants' motion to intervene as defendants as of right or permissively pursuant to Fed. R. Civ. P. 24(a), (b).  Denial of a motion to intervene as of right is a final, appealable order.  *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370 (1987); *Morton v. Bricklayers, Masons and Plasterers Int'l Union of America,* 543 F.2d 224 (D.C. Cir. 1976).

---

[1] Citations to the Appendix submitted by movant-appellants are abbreviated "App. #"; citations to documents in the docket but not contained in the appendix are abbreviated "Dkt. #."

STATEMENT OF THE ISSUE

Whether the district court erred in denying, without explanation, three environmental organizations' unopposed motion to intervene as defendants as of right or permissively pursuant to Fed. R. Civ. P. 24(a), (b).

STATEMENT OF THE CASE

This is an appeal by Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands (collectively "KS Wild") of a minute order denying their motion to intervene as defendants as of right or permissively pursuant to Fed. R. Civ. P. 24(a), (b), in a case where timber plaintiffs seek to greatly increase logging levels on federal public land in Oregon. KS Wild has worked for years to advocate for and obtain many of the environmental standards that would be violated by such an increase in logging. KS Wild's motion was timely; KS Wild has well-established and longstanding interests in management of these lands; KS Wild's interests could be harmed by this litigation; and KS Wild's interests are not adequately represented by the existing parties to the case. KS Wild's motion to intervene was unopposed, yet the district court denied intervention without explanation.[2] This appeal followed.

---

[2] KS Wild's motion to intervene continues to be unopposed, as counsel for both plaintiff-appellees and federal defendant-appellees have stated that they do not intend to file a substantive brief in this appeal.

## STATEMENT OF FACTS

This appeal stems from a skirmish in the long-running battle over protection of federally-owned old-growth forests in the Pacific Northwest.  The underlying case focuses on the U.S. Bureau of Land Management ("BLM") and its management of over 2 million acres of forest land in Oregon covered by the Oregon and California Lands Act of 1937 ("O&C Act"), among other federal laws.[3]

No legal challenge to timber management in the Pacific Northwest can be understood without a discussion of the years of controversy over management of old-growth forests by the U.S. Forest Service and BLM.  In 1991, upon uncovering "a remarkable series of violations of the environmental laws," and "a deliberate and systematic refusal … to comply with the laws protecting wildlife," a Washington federal district court issued an injunction halting timber sales in federally owned old-growth forests.  *Seattle Audubon Soc'y v. Evans,* 771 F. Supp. 1081, 1089-90 (W.D. Wash.), *aff'd,* 952 F.2d 297 (9th Cir. 1991).  The following year, an Oregon district court enjoined BLM from proceeding with further timber

---

[3] The O&C Act governs railroad grant lands that revested in the federal government due to the railroad company's breach of its statutory duties.  In the Act, Congress sought to put an end to wasteful and destructive logging practices that clear-cut large forest areas for short-term gains without safeguarding the forests and other resources.  The Act instituted a conservation ethic, making it the first federal statute to impose sustained-yield constraints on timber cutting. 43 U.S.C. § 1181a.

sales in old-growth forests pending compliance with federal environmental laws.

*Portland Audubon Soc'y v. Lujan,* 795 F. Supp. 1489 (D. Or. 1992), *aff'd sub nom.*

*Portland Audubon Soc'y v. Babbitt,* 998 F.2d 705 (9th Cir. 1993).

To end the gridlock, President Clinton convened a forest conference and

directed the land management agencies to craft a comprehensive, long-term

management strategy.  The resulting 1994 Northwest Forest Plan has been

heralded as the first science-based ecosystem management strategy for federal

lands.  The Plan contained standards and guidelines for managing both Forest

Service and BLM public lands, created old-growth and riparian reserves, and

provided for continued timber harvest.  The Northwest Forest Plan Record of

Decision amended the existing forest plans for 19 national forests and was

incorporated into the newly developed plans for BLM districts within the range of

the northern spotted owl in 1995.

Several court decisions from this period confirm that BLM has a great deal

of discretion in its management of the O&C Act lands.  *Portland Audubon Society*

*v. Babbitt* held that there was no unavoidable conflict between the O&C Act and

the National Environmental Policy Act, even though the O&C Act's timber targets

(stated as minimums) could not be met under the court-ordered injunction.

998 F.2d at 709.  *Seattle Audubon Society v. Lyons* held that the Northwest Forest

Plan did not violate the O&C Act, noting that "management under the [O&C Act]

4

must look not only to annual timber production but also to protecting watersheds, contributing to economic stability, and providing recreational facilities." 871 F. Supp. 1291, 1314 (W.D. Wash. 1994) (appeal history omitted).

Timber plaintiffs Swanson Group *et al.* have now challenged BLM's failure to "maintain an actual annual timber sale level that is not less than 80 percent of the annual allowable sale quantity" set forth in the relevant 1995 Resource Management Plans. Dkt. 1, Complaint ¶ 60 (Oct. 29, 2010). Swanson Group claims that BLM has a non-discretionary duty to meet 80 percent of the annual allowable sale quantity estimated in the Medford and Roseburg District's Resource Management Plans and asks the Court not only to order that this 80 percent amount be maintained, *see* Complaint, Prayer for Relief ¶ 1, but also to order an additional number of timber sales to make up for the alleged shortfall. *Id.* ¶ 2.

KS Wild filed a motion to intervene as defendants on December 16, 2010, Dkt. 12, lodging an answer-in-intervention addressing only Claim 1 of plaintiffs' complaint, that federal defendants have violated a non-discretionary duty to offer a specific amount of timber for sale each year on certain BLM lands in Oregon. Swanson Group did not oppose intervention, nor did federal defendants, although federal defendants asked the court to impose several conditions on KS Wild's participation. Dkt. 13. While the intervention motion was pending, federal defendants moved to dismiss the amended complaint. Dkt. 20. On July 19, 2011,

5

the district court denied, without explanation, KS Wild's intervention motion.

App. 19.  On August 25, 2011, again without explanation, the district court denied

the motion to dismiss.  KS Wild filed its notice of appeal on September 9, 2011.

On October 18, 2011, the district court set a summary judgment briefing schedule

that extends into April 2012.  App. 23.

Because the underlying case in the district court is proceeding on a summary

judgment schedule, KS Wild moved to expedite this appeal, waiving oral argument

at the same time.  In addition, both timber plaintiffs and federal defendants have

represented that they will not be filing a substantive brief in this appeal, making

this opening brief the only anticipated filing before this Court.

## SUMMARY OF ARGUMENT

Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands

are grassroots non-profit conservation groups whose missions focus on the

protection and management of federal public forests in Oregon.  These

organizations and their members have played an active role in protecting old-

growth forests in the Pacific Northwest for many years.  Moreover, members of

these three groups use and enjoy the forests at issue in the underlying case.  The

district court denied KS Wild's motion to intervene without explanation, and it is

impossible to discern the lower court's reasoning: KS Wild meets all four factors

for intervention as of right set forth by this Court; additionally, KS Wild has

standing, and neither of the parties in the district court opposed KS Wild's

intervention.  KS Wild respectfully asks the Court to reverse the order of the

district court and grant KS Wild's motion to intervene as defendants as of right, or,

in the alternative, permissively.

## ARGUMENT

The Federal Rules of Civil Procedure establish two avenues for intervention,

both of which provide for KS Wild's participation in this litigation.  *See* Fed. R.

Civ. P. 24.  Under Rule 24(a)'s provision for "intervention of right," a court:

> *must* permit anyone to intervene who … claims an interest relating to
> the property or transaction that is the subject of the action, and is so
> situated that disposing of the action may as a practical matter impair
> or impede the movant's ability to protect its interest, unless existing
> parties adequately represent that interest.

*Id.* Rule 24(a)(2) (emphasis added).  Under Rule 24(b)'s provision for "permissive

intervention," a court "*may* permit anyone to intervene who … has a claim or

defense that shares with the main action a common question of law or fact."  *Id.*

Rule 24(b)(1)(B) (emphasis added).  In denying KS Wild's request for intervention

under each of these standards, the district court erred.

## I.     STANDARD OF REVIEW

This appeal poses one straightforward legal question: whether the district

court erred by denying KS Wild's motion for intervention as of right or

permissively pursuant to Fed. R. Civ. P. 24(a), (b).  The denial of a motion to

intervene as of right is an appealable final order "because it is conclusive with

7

respect to the distinct interest asserted by the movant." *Smoke v. Norton,* 252 F.3d 468, 470 (D.C. Cir. 2001). This Court has employed three standards of review for denials of motions to intervene, based on whether the questions raised were legal issues, factual issues, or involved judicial discretion. *Fund for Animals v. Norton,* 322 F.3d 728, 732 (D.C. Cir. 2003). However, "where (as here) the district court has not accompanied its decision with either factual findings or explanation, there is nothing to which we can defer regardless of which standard of review applies." *Id., see also Karsner v. Lothian,* 532 F.3d 876, 886 (D.C. Cir. 2008) ("here we review *de novo* because the district court failed to provide any findings for us to review").

## II.   KS WILD MEETS THE STANDARD FOR INTERVENTION AS OF RIGHT.

The purpose of Rule 24(a) is to grant the right of intervention to all who "would be substantially affected in a practical sense by the determination made in an action." Fed. R. Civ. P. 24 Advisory Committee's note (1966 Amendment). This Court uses a four-part test to evaluate motions to intervene as of right, considering

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund for Animals,* 322 F.3d at 731 (quoting Fed. R. Civ. P. 24(a)) (citations

omitted).  This is a "liberal and forgiving standard," *American Horse Protection*

*Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001), and courts are guided

by practical considerations in applying it.  *Foster v. Gueory*, 655 F.2d 1319, 1324-

25 (D.C. Cir. 1981).  Here, KS Wild satisfies each of the four requirements for

intervention as of right.  KS Wild also has Article III standing.[4]

A.    KS Wild's Motion to Intervene Was Timely.

Timeliness is assessed "in consideration of all of the circumstances,"

including the time elapsed since inception of the suit and the risk of prejudice to

existing parties.  *United States v. British Am. Tobacco Australia Services, Ltd.*,

437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. Am. Tel. & Tel.*

*Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  Courts in this circuit routinely

determine that motions to intervene filed within a few months of the initiation of

---

[4] This Court has expressed doubt that defendant-intervenors should be required to
demonstrate Article III standing.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d
228, 233 (D.C. Cir. 2003) ("Requiring standing of someone who seeks to intervene
as a defendant runs into the doctrine that the standing inquiry is directed at those
who invoke the court's jurisdiction."); *Jones v. Prince George's County,
Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003).  Elsewhere, the Court has
required proposed intervenors to demonstrate Article III standing.  *Fund for
Animals*, 322 F.3d at 731–32.  A decision of the U.S. Supreme Court from last
term confirms that the burden of showing Article III standing falls on parties that
"seek[] to initiate or continue proceedings," not on defendants.  *Bond v. United
States*, 131 S. Ct. 2355, 2361–62 (2011).  Regardless, KS Wild has standing and
provided such information to the district court.  *See* App. 1-18, Declarations of
Josh Laughlin, Chandra LeGue, and George Sexton.

the action are timely.  *E.g.*, *Fund for Animals*, 322 F.3d at 735; *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 8 (D.D.C. 2001).  *See also National Wildlife Fed. v. Burford*, 878 F.2d 422, 434 (D.C. Cir. 1989) (intervention timely nine weeks after notice even where litigation commenced several years earlier), *rev'd on other grounds sub nom Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).  Motions to intervene filed before the parties have joined issue in the pleadings are "clearly timely."  7C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1916 & n.13 (2d ed. 1986); *accord Akiachak Native Cmty. v. U.S. Dept. of Interior*, 584 F. Supp. 2d 1, 5-6 (D.D.C. 2008); *Am. Forest Res. Council v. Hall*, 2007 WL 1576328, *1 (D.D.C. 2007).  Here, there can be no doubt that the motion to intervene was timely.  Swanson Group's complaint was filed on October 29, 2010, and KS Wild moved to intervene on December 16, 2010—almost two months before federal defendants' answer was due on February 4, 2011.  No party would have been prejudiced by intervention at that time, and indeed, no party objected to KS Wild's intervention.

  B.    KS Wild Has an Interest in the Subject Matter of This Litigation.

  The interest requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).  "[P]roposed intervenors of right 'need only an interest in the litigation—not a

cause of action or permission to sue.'" *Friends of Animals v. Kempthorne*,

452 F. Supp. 2d 64, 69 (D.D.C. 2006) (quoting *Jones v. Prince George's County,*

*Md.*, 348 F.3d at 1018).  KS Wild's interest in this litigation is two-fold: it has

invested significant time and resources in support of increased protections for old-

growth forests in Oregon (protections the timber plaintiffs seek to invalidate), and

its members use and enjoy the federal forests that are the subject of this litigation.

    *1.    KS Wild Is Dedicated to the Protection of These Federal Public Lands.*

    All three groups are non-profit environmental organizations dedicated to the

prudent stewardship of federal public lands in Oregon.  *See generally* App. 14-18,

Declaration of George Sexton; App. 7-13, Declaration of Chandra LeGue; and

App. 1-6, Declaration of Josh Laughlin.  These organizations and their members

have a longstanding interest in the proper management and environmental

protection of the public forests at issue in this case, and they have played an active

role in protecting old-growth forests in the Pacific Northwest for well over a

decade.  Each organization has a strong interest in the outcome of this case.  KS

Wild, Oregon Wild, Cascadia Wildlands, and their members have been in the

forefront of protecting old-growth forests and the fish and wildlife that rely on

them through habitat restoration, participation in the administrative process,

litigation, and public education.  These groups, along with other environmental

organizations, have been a key factor in forcing BLM to bring its management of

its lands in Oregon into compliance with environmental laws.  These groups have
an obvious interest in defending these public lands from increased destructive
logging—the result urged by timber plaintiffs here.

Klamath-Siskiyou Wildlands Center is a non-profit organization
incorporated in Oregon with offices in Ashland and Williams, Oregon, with 2,000
members concentrated in southern Oregon and northern California.  App. 15,
Sexton Decl. ¶ 2.  Klamath-Siskiyou Wildlands Center is dedicated to preserving
the unique biological diversity of the Klamath-Siskiyou region in southwest
Oregon and northwest California.  *Id.*  Klamath-Siskiyou Wildlands Center
monitors federal public lands to ensure that management activities comply with
relevant federal laws, including environmental laws.  *Id.* ¶ 4.  One focus of
Klamath-Siskiyou Wildlands Center's work is enforcement of the Northwest
Forest Plan, the 1994 ecosystem management plan which put both the Forest
Service and BLM under one overarching management scheme intended to
maintain old forests and habitat connectivity in the Pacific Northwest.  Klamath-
Siskiyou Wildlands Center has a specific interest in the O&C Act lands managed
by the BLM in southwest Oregon, including monitoring all Medford BLM projects
on O&C Act lands.  App. 16, Sexton Decl. ¶¶ 5-7.

Oregon Wild is a non-profit corporation organized under the laws of the
State of Oregon.  Oregon Wild is headquartered in Portland, Oregon, with field

offices in Eugene and Bend.  App. 8, LeGue Decl. ¶ 1.  Oregon Wild has

approximately 4,500 individual and organizational members.  *Id.*  Oregon Wild's

mission is to protect and restore Oregon's wild lands, wildlife, and water as an

enduring legacy.  Oregon Wild's primary goals include permanent protection of

roadless areas and mature and old-growth forests.  *Id.* ¶ 2.  Oregon Wild has a long

history of involvement in the planning efforts that led to the landmark Northwest

Forest Plan.  Oregon Wild has engaged in extensive efforts to enforce the

Northwest Forest Plan and protect older forests and watersheds from the effects of

logging and road building.  Oregon Wild has also been deeply involved in the

BLM's Western Oregon Plan Revision process, a continuing controversy that

pertains to these BLM lands in western Oregon.  Oregon Wild regularly monitors

timber harvest activity on the Roseburg and Medford BLM Districts, submitting

comments on proposed actions, and challenging decisions that are legally invalid.

App. 9-10, LeGue Decl. ¶¶ 5-8.

Cascadia Wildlands is an Oregon non-profit organization based in Eugene,

Oregon.  App. 2, Laughlin Decl. ¶ 1.  Cascadia's mission is to defend the forests,

waters, and wildlife of the Cascadia bioregion, including western Oregon, by

"safeguard[ing] these lands and the ecosystem services they provide for

surrounding communities, including drinking water filtration, carbon storage for

climate stability, fish and wildlife habitat, air purification, and recreational

13

opportunities." *Id.* ¶ 3.  Cascadia and its members participate in federal decision-making processes that impact public lands managed by BLM throughout Oregon. App. 3-5, Laughlin Decl. ¶¶ 4-10.

2.    *KS Wild's Members Use and Enjoy These Federal Public Lands.*

Each group also has members who reside near, visit, or otherwise use and enjoy BLM public lands in the Medford and Roseburg Districts in a variety of ways, including recreation, hunting and fishing, wildlife viewing and education, and aesthetic and spiritual enjoyment.  App. 16-17, Sexton Decl. ¶¶ 8-9 ("It is rare that a week goes by in which I do not visit public lands administered by the Medford District BLM."); App. 10-11, LeGue Decl. ¶¶ 9-12 ("I enjoy using BLM forests in western Oregon for hiking, camping, swimming, and nature observation, and I have a deep and long-standing interest in the conservation of our public lands and the ecosystems they contain."); App. 2, Laughlin Decl. ¶ 2 ("Some of our members live adjacent to these BLM lands and utilize the areas for their hunting, fishing, birding, and other recreation opportunities."); App. 5, *id.* at ¶¶ 11-12 ("I also go to Roseburg and Medford BLM lands for pleasure—to hike or bird watch, and for solitude.").  These lands are part of the federal lands governed by the Northwest Forest Plan, the management plan movants and their members have long worked to support and defend.  App. 15-16, Sexton Decl. ¶ 5; App. 3, Laughlin Decl. ¶ 5; App. 9-10, LeGue Decl. ¶¶ 6-7.

14

If timber plaintiffs' requests for relief are granted, KS Wild and its members would suffer an injury-in-fact due to increased timber harvest on the Medford and Roseburg BLM Districts. *See* App. 17-18, Sexton Decl. ¶¶ 10-12; App. 12, LeGue Decl. ¶¶ 14-15; App. 5-6, Laughlin Decl. ¶¶ 13-15. Such injury could be redressed through participation in this case, where KS Wild intends to explain the damage plaintiffs' request could cause to the environment and to the law, which could help prevent plaintiffs' request for relief from being granted. In addition, the *stare decisis* effect of a ruling in plaintiffs' favor could cause harm to KS Wild's interests in protection of BLM old-growth forest ecosystems. *See Nuesse v. Camp*, 385 F.2d at 702. In this way, KS Wild claims an interest relating to both the "transaction" and the "property" that are the subject of this action. Fed. R. Civ. P. 24(a); *Environmental Defense Fund v. Costle,* 79 F.R.D. 235, 243 (D.D.C. 1978), *aff'd,* 12 E.R.C. 1255 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 1071 (1979); *Friends of Animals*, 452 F. Supp. 2d at 69; *see Sierra Club v. U.S. Envtl. Prot. Agency,* 995 F.2d 1478, 1484 (9th Cir. 1993) ("It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.").

C.     KS Wild's Interests May Be Impaired as a Result of This Litigation.

Like the "interest" test, Rule 24(a)'s "impairment" requirement does not impose a substantial barrier to intervention. As explained in the advisory

committee's note, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  Fed. R. Civ. P. 24 Advisory Committee Note (1966 Amendment).  An applicant for intervention as of right must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect" the interests at stake in the litigation.  Fed. R. Civ. P. 24(a).  A "possibility" of impairment of applicants' interests is sufficient. *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981); *American Horse Protection Ass'n*, 200 F.R.D. at 158.

   In this suit, timber plaintiffs seek to increase timber harvest on the Medford and Roseburg BLM districts without concern for sustainability, harm to the old-growth ecosystem, or compliance with other laws.  Such a result would irreparably harm KS Wild's interests by frustrating years of effort spent working to protect these old-growth forests.  *See, e.g., Natural Res. Defense Council v. EPA,* 99 F.R.D. 607, 609 (D.D.C. 1983) (granting intervention as of right to industry groups in a FACA case that could "nullif[y]" the group's efforts).  Furthermore, if Swanson Group succeeds in increasing timber harvest by making heretofore discretionary timber targets mandatory, such a ruling could affect many other lands in the Pacific Northwest and beyond.  *See* App. 12, LeGue Decl. ¶ 13 ("A decision to increase the annual harvest level on BLM Districts in western Oregon will cause

ripple effects throughout the region.").  This potential *stare decisis* effect represents an additional "practical disadvantage" that warrants intervention as of right.  *Nuesse*, 385 F.2d at 702; *accord Foster*, 655 F.2d at 1325.

If the district court grants Swanson Group the relief it seeks—an order mandating increased logging levels from these federal public lands—these forests, and KS Wild's interests, will be irreparably harmed.  *See* App. 15, Sexton Decl. ¶ 12 ("Weakening the protections of the Northwest Forest Plan by mandating certain timber harvest levels would also have dire effect on KS Wild's ability to meet its organizational mission."); App. 12, LeGue Decl. ¶ 14 ("My interests and those of Oregon Wild will be seriously harmed if plaintiffs prevail on their first claim in this case.  Increasing timber harvest on the Roseburg and Medford BLM Districts, regardless of the harmful impact of that logging, based on estimates in the 1995 Resource Management Plans, threatens the areas that I visit and enjoy."); App. 5-6, Laughlin Decl. ¶¶ 13-15.  The Supreme Court has stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable."  *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 545 (1987). The ecological importance of the BLM lands in southern Oregon is undisputed. These lands are part of the Pacific Northwest old-growth forest ecosystem—a swath of forest land west of the Cascade Mountain crest dominated by mature and

17

old-growth trees, abundant rivers and streams, and vibrant native species. Increased logging on these lands will irreparably harm the ecological integrity of these forests and destroy the critical habitat of countless species, including salmon, owls, and murrelets protected under the Endangered Species Act and other laws. This damage, in turn, will harm the interests of KS Wild and its members in using and enjoying a thriving ecosystem free of the damage caused by unsustainable timber harvest.

Courts have found sufficient impairment to sustain intervention for conservation groups in suits such as this. *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1398 (9th Cir. 1995) (decision to remove species from endangered species list impairs conservation groups' interest in preservation); *Sagebrush Rebellion v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983) ("An adverse decision in this suit would impair the society's interest in the preservation of birds and their habitats"); *Douglas Timber Operators v. Salazar,* No. 09-1704-JR (D.D.C. 2009) (granting intervention to conservation group that challenged agency action plaintiffs sought to reinstate). Because KS Wild is so situated that the disposition of this action may, as a practical matter, impair its ability to protect its interests in publically-owned forest land, Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands plainly satisfy Rule 24(a)'s impairment-of-interest requirement.

D.    Neither of the Existing Parties Adequately Represent KS Wild's
      Interests.

Finally, an applicant for intervention as of right must show that its interests

may be inadequately represented by the existing parties to the litigation.  This

requirement is "not onerous," *Fund for Animals*, 322 F.3d at 735, and "should be

treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528,

538 n.10 (1972).  Indeed, an applicant "ordinarily should be allowed to intervene

unless it is clear that the party will provide adequate representation for the

absentee." *Fund for Animals*, 322 F.3d at 735 (quotation and citation omitted).

This Court has "often concluded that governmental entities do not

adequately represent the interest of aspiring intervenors." *Fund for Animals*,

322 F.3d at 736 (citing *Natural Res. Defense Council v. Costle*, 561 F.2d 904, 912-

13 (D.C. Cir. 1977); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1989)).  The

Federal Government represents the broad public interest, which differs in

important respects from the conservation interest pursued by KS Wild.  *Friends of

Animals*, 452 F. Supp. 2d at 70.

Here, neither Swanson Group nor federal defendants adequately represents

KS Wild's interests.  Swanson Group's interests are directly adverse to those of KS

Wild.  Swanson Group seeks to increase the annual timber harvest on the Medford

and Roseburg Districts, regardless of sustainability or compliance with other laws,

while KS Wild seeks to balance timber harvest with BLM's other legal obligations.

19

Swanson Group simply does not represent KS Wild's interests.

The federal defendants' interests may also be adverse to those of applicants. *See People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government's mandate to design and enforce an entire regulatory system precludes it from adequately representing one party's interest in it). Federal defendants' longstanding reluctance to adequately protect Oregon old-growth forests and implement a scientifically-based forest restoration program highlights the risk that they will not present a vigorous defense to Swanson Group's first claim or will enter a settlement that commits BLM to a harmful level of annual timber harvest. *See, e.g., AFRC v. Clarke*, No. 94-1031-TPJ (D.D.C. 2003) (BLM settled timber industry suit, agreeing to revise its resource management plans in western Oregon).

Moreover, movants have had to sue the federal defendants repeatedly to compel lawful management of and environmental protection for the federal lands at issue. Again and again, these groups have successfully turned to the courts to order the federal agencies to obey the law. The federal government's past failure to protect these lands casts doubt on its ability to vigorously defend KS Wild's interests here. *See, e.g., Portland Audubon Soc'y v. Lujan,* 795 F. Supp. 1489 (D. Or. 1992); App. 4-5, Laughlin Decl. ¶¶ 9-10; App. 10, LeGue Decl. ¶ 8; App. 16, Sexton Decl. ¶ 7.

20

Accordingly, given the minimal showing necessary to find inadequate representation, none of the existing parties to this litigation adequately represent KS Wild's conservation interests, and KS Wild should have been granted intervention as of right.

E.     KS Wild Has Article III Standing.

If the requirements of Article III standing applied to defendant-intervenors, *see supra* n.1, KS Wild would satisfy them. The threat of harm to KS Wild's members' aesthetic, recreational, scientific, and subsistence interests in specific areas of these BLM forests represents a concrete injury-in-fact, fairly traceable to this litigation, and redressable by denial of the relief sought by timber plaintiffs. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Am. Horse Prot. Ass'n*, 200 F.R.D. at 156. Members of these three conservation groups hunt, fish, work, and recreate in BLM forests that are threatened with increased logging if the demands of timber plaintiffs are met. *See* App. 15-18, Sexton Decl. ¶¶ 5-12; App. 8-12, LeGue Decl. ¶¶ 2-15; App. 2-6, Laughlin Decl. ¶¶ 2–15. Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands have standing to represent their members because their members have standing in their own right, the interests at stake are germane to the groups' organizational purposes, and the lawsuit does not require the participation of individual members. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 181 (2000).

III.    IN THE ALTERNATIVE, KS WILD IS ENTITLED TO PERMISSIVE
        INTERVENTION.

In the alternative, Rule 24(b) of the Federal Rules of Civil Procedure

provides for permissive intervention at the Court's discretion where an applicant's

claim or defense, in addition to being timely, possesses questions of law or fact in

common with the existing action. *Equal Opportunity Comm'n v. National*

*Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("[F]orce of precedent . . .

compels a flexible reading of Rule 24(b).").  This is a substantially lesser burden

than the test for intervention as of right under Rule 24(a).  *Id.*

Here, KS Wild meets the Rule 24(b) standard.  KS Wild has a significant

interest in the use and enjoyment of the public forests on BLM lands in western

Oregon, particularly those lands on the Medford and Roseburg BLM Districts.  KS

Wild also has an interest in a valid interpretation of the requirements and limits of

the O&C Act.  Given the importance of the issues involved in this case, the stake

applicants have in the protection of Oregon's old-growth forests, the early stage of

the underlying litigation, and the fact that no party opposed intervention, *see*

*Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989) (reversing denial of

permissive intervention where, among other things, "[n]either of the original

parties … alleged that [the applicant's] intervention would cause delay or prejudice

to the adjudication of their rights"), the Court should allow permissive

intervention.

22

CONCLUSION

For the reasons discussed above, KS Wild respectfully asks the Court to

reverse the district court and grant KS Wild's motion to intervene as defendants as

of right, or, in the alternative, permissively, pursuant to Fed. R. Civ. P. 24(a), (b).

Respectfully submitted this 28th day of October, 2011.


s/  Kristen L. Boyles
KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
kboyles@earthjustice.org

SUSAN JANE M. BROWN
Western Environmental Law Center
4107 N.E. Couch Street
Portland, OR  97232
(503) 914-1323 | Phone
(541) 485-2457 | Fax
brown@westernlaw.org

*Attorneys for Movant-Appellants Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands*

23

CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because this brief contains 5,344 words,

excluding the parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii) and this Court's rules.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft Office Word 2010 in 14-point

Times New Roman.

Respectfully submitted this 28th day of October, 2011.


                              s/  Kristen L. Boyles
                              KRISTEN L. BOYLES
                              Earthjustice
                              705 Second Avenue, Suite 203
                              Seattle, WA  98104
                              (206) 343-7340 | Phone
                              (206) 343-1526 | Fax
                              kboyles@earthjustice.org

1

SUSAN JANE M. BROWN
Western Environmental Law Center
4107 N.E. Couch Street
Portland, OR 97232
(503) 914-1323 | Phone
(541) 485-2457 | Fax
brown@westernlaw.org

*Attorneys for Movant-Appellants Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington.

I am over 18 years of age and not a party to this action.  My business address is

705 Second Avenue, Suite 203, Seattle, Washington 98104.

On October 28, 2011, I served a true and correct copy of:

1.     Movant-Appellants' Opening Brief – Oral Argument Waived; and
2.     Movant-Appellants' Appendix

on the parties listed below:

Mark C. Rutzick
Mark C. Rutzick, Inc.                     ☐ via facsimile
12402 Myra Virginia Court                 ☐ via overnight courier
Oak Hill, VA  20171                       ☐ via first-class U.S. mail
(703) 870-7346 | Phone                    ☐ via hand delivery
(703) 870-7347 | Fax                      ☒ via electronic service by Clerk
markrutzick@cox.net                       ☐ via e-mail
*Attorney for Plaintiff-Appellees*

Robert Evans Kopp
U.S. Department of Justice                ☐ via facsimile
Civil Division – Appellate Staff          ☐ via overnight courier
950 Pennsylvania Avenue, N.W.             ☐ via first-class U.S. mail
Washington, D.C.  20530-0001             ☐ via hand delivery
(202) 514-2000 | Phone                    ☒ via electronic service by Clerk
robert.kopp@usdoj.gov                     ☐ via e-mail
*Attorney for Federal Defendant-Appellees*

I, Catherine Hamborg, declare under penalty of perjury that the foregoing is true and correct.  Executed on this 28th day of October, 2011, at Seattle, Washington.

s/  Catherine Hamborg
Catherine Hamborg